**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 08-cv-01819-REB-MEH

NORTHWEST PARKWAY PUBLIC HIGHWAY AUTHORITY,

     Plaintiff,

v.

BAYERISCHE HYPO-UND VEREINSBANK AG, New York Branch,

     Defendant.

---

**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**

---

**Blackburn, J.**

The matters before me are (1) **Plaintiff's Motion for Summary Judgment on Defendant's Counterclaim and Affirmative Defense** [#100][1] filed January 29, 2010; and (2) defendant **HVB's Motion for Summary Judgment and Memorandum Brief in Support** [#104] filed January 29, 2010.  I grant defendant's motion for summary judgment and deny plaintiff's summary judgment motion as moot.[2]

## I.  JURISDICTION

I have jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (diversity of citizenship).

---

[1]  "[#100]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

[2]  My resolution of the summary judgment motions also moots consideration of **HVB's Motion To Strike Expert Report of and Preclude Testimony by Aron Jaroslawicz, Esq.** [#103], filed January 29, 2010.

## II.  STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  **FED.R.CIV.P.** 56(c); ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  A dispute is "genuine" if the issue could be resolved in favor of either party. ***Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.***, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); ***Farthing v. City of Shawnee***, 39 F.3d 1131, 1135 (10th Cir. 1994).  A fact is "material" if it might reasonably affect the outcome of the case.  ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); ***Farthing***, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine fact issue.  ***Concrete Works, Inc. v. City & County of Denver***, 36 F.3d 1513, 1517 (10th Cir. 1994), ***cert. denied***, 115 S.Ct. 1315 (1995).  By contrast, a movant who bears the burden of proof must submit evidence to establish every essential element of its claim or affirmative defense.  ***See In re Ribozyme Pharmaceuticals, Inc. Securities Litigation***, 209 F.Supp.2d 1106, 1111 (D. Colo. 2002).  In either case, once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper.  ***Concrete Works***, 36 F.3d at 1518.  All the evidence must be viewed in the light most favorable to the party opposing the motion.  ***Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services***, 165 F.3d 1321, 1326 (10th Cir.), ***cert. denied***, 120 S.Ct. 53 (1999).

## III.  ANALYSIS

Plaintiff Northwest Parkway Public Highway Authority was created in 1999 to construct and operate the Northwest Parkway, a toll road in Colorado.  Plaintiff issued revenue bonds in 2001 and entered into a Master Trust Indenture with Wells Fargo Bank, West N.A. ("Wells Fargo") as the Trustee.  Pursuant to that role, Wells Fargo managed investments for certain accounts in the Indenture, including, of particular relevance here, a Senior Bonds Debt Service Reserve Account (the "Reserve Account").

On June 28, 2001, Wells Fargo executed a Debt Service Reserve Account Forward Delivery Agreement (the "FDA" or "Agreement") with defendant.  Under the terms of the Agreement, Wells Fargo received from defendant certain eligible securities guaranteed to provide interest at a fixed rate.  Wells Fargo entered into the Agreement "solely in its capacity as trustee of the Indenture" (Def. Motion App., Exh. A-1 at 1 [#104-1], filed January 29, 2010), and plaintiff was expressly denominated as a third-party beneficiary to the Agreement (*see id.*, Exh. A-1 § 8.13 at 25).

On October 19, 2007, defendant received notice that the bonds were to be defeased imminently and that, therefore, that Wells Fargo would exercise its termination rights under the FDA.  Of particular relevance here, Wells Fargo requested, *inter alia*, that defendant calculate and remit any "Termination Amount" that might be owed under the terms of the Agreement.  (*Id.*, Exh. A-5 & Exh. A-1 §§ 1.01 at 5 & 2.05 at 9 [#104], filed January 29, 2010.)  Defendant agreed to remit all principal and accumulated interest in the account, but disputed that any Termination Amount was owed.  This

lawsuit followed.

Defendant has moved for summary judgment on the ground that plaintiff, which was not a signatory to the FDA, lacks standing to sue for breach thereof.  Standing is an essential component of the court's subject matter jurisdiction.  ***Habecker v. Town of Estes Park, Colorado***, 518 F.3d 1217, 1223 (10th Cir. 2008); ***Johnstown Feed & Seed, Inc. v. Continental Western Insurance Co.***, 641 F.Supp.2d 1167, 1172 (D. Colo. 2009).  As the party invoking jurisdiction, plaintiff bears the burden of establishing its standing to pursue its claims.  ***Day v. Bond***, 500 F.3d 1127, 1132 (10th Cir. 2007), ***cert. denied***, 128 S.Ct. 2987 (2008); ***Johnstown Feed & Seed***, 641 F.Supp.2d at 1172.  "In order to have sufficient standing to sue, a plaintiff must have suffered an 'injury in fact' – namely, an actual or imminent, concrete and particularized invasion of a legally-protected interest."  ***Johnstown Feed & Seed***, 641 F.Supp.2d at 1172.  Plaintiff claims to have standing as a third-party beneficiary of the FDA.  Alternatively, it posits that it is the real party in interest under the FDA.  I examine these arguments *seriatim*.[3]

"In determining third-party beneficiary status, the key inquiry is whether the contracting parties intended to confer a benefit on the third party, and that intent must either appear on the face of the contract or arise by necessary implication."  ***Johnstown Feed & Seed***, 641 F.Supp.2d at 1174 (citing ***East Meadows Co. v. Greeley Irrigation Co.***, 66 P.3d 214, 217 (Colo. App. 2003)).  It is clear here that the parties intended to make plaintiff a third-party beneficiary of the FDA, as the Agreement itself specifically

_____

[3] I note that the FDA contains a forum selection clause "irrevocably" agreeing to jurisdiction in the courts of the state of New York.  (**Def. Motion** App., Exh. A-1 § 8.09 at 24.)  As neither party raises or addresses the issue by these motions, and defendant has not objected to maintenance of this suit in this federal district court, I do not consider the matter.

4

provides that "[t]he [plaintiff] and Bond Insurers are third party beneficiaries to this

Agreement." (**Def. Motion** App., Exh. A-1 § 8.13 at 25.)

Generally, speaking, a third-party beneficiary may sue on a contract made for its

benefit. *See **Autocon Industries, Inc. v. Western States Construction Co.**, 728 P.2d

374, 375 (Colo. App. 1986). Nevertheless, the FDA further provides that

> [n]othing expressed on implied herein is intended or shall be
> construed to confer upon any person, firm or corporation
> other than the parties hereto and the Bond Insurers, any
> right, remedy or claim by reason of this Agreement or any
> term hereof, and all terms contained herein shall be for the
> sole and exclusive benefit of the parties hereto, and their
> successors and permitted transferees.

(*Id.* § 8.03 at 24.) This clause is A third-party beneficiary's rights "are absolutely defined

by the terms of the contract." WILLISTON ON CONTRACTS § 37:23. *See also*

RESTATEMENT (SECOND) OF CONTRACTS § 309, cmt. b ("Where there is a contract, the

right of a beneficiary is subject to any limitations imposed by the terms of the contract.");

*ADT Security Services, Inc. v. Apex Alarm, LLC*, 430 F.Supp.2d 1199, 1201 (D.

Colo. 2006) (forum selection clause enforceable against third-party beneficiary). Here,

section 8.03 unequivocally expresses the parties' intent that strangers to the

Agreement, including plaintiff itself, could not sue to enforce the FDA without the

consent of the parties.

To accept plaintiff's argument that this clause is not material in light of its third-

party beneficiary status would effectively nullify section 8.03. Such an outcome is to be

avoided, if possible. *Copper Mountain, Inc. v. Industrial Systems, Inc.*, 208 P.3d

692, 700 (Colo. 2009) ("We choose a construction of the contract that harmonizes

provisions instead of rendering them superfluous."); *Holland v. Board of County Commissioners of County of Douglas*, 883 P.2d 500, 505 (Colo. App. 1994) (contract "must be construed as a whole and effect must be given to every provision, if possible"). Such a harmonizing construction is entirely possible here.  There is nothing inherently inconsistent in conferring third-party beneficiary status on plaintiff while simultaneously providing that such status does not entitle plaintiff to bring suit under the contract. Although plaintiff insists that there was no point to affording it third-party beneficiary status other than to allow it to sue under the Agreement, given the unambiguous nature of the language used in the FDA, I need not speculate as to why the parties structured the contract thus.  "When a contractual provision unambiguously resolves the parties' dispute, the interpreting court's task is over."  *Level 3 Communications, LLC v. Liebert Corp.*, 535 F.3d 1146, 1154 (10th Cir. 2008).[4]

This construction also meshes with the general principle of contract interpretation that "a more specific provision controls the effect of general provisions."  *E-470 Public Highway Authority v. Jagow*, 30 P.3d 798, 801 (Colo. App. 2001), *aff'd*, 49 P.3d 1151 (Colo. 2002).  Here, section 8.13's broad, global grant of third-party beneficiary status to plaintiff is expressly circumscribed by the more specific standing requirements of section 8.03.  Likewise, the fact that the Bond Insurers, who, like plaintiff, are designated as third-party beneficiaries to the Agreement, are expressly granted the right to sue thereunder, whereas plaintiff is not, is particularly telling.  In short, it is clear from

---

[4] Plaintiff's wholly unsubstantiated speculations regarding why the language was chosen do not constitute "extrinsic evidence," which may be conditionally admitted to determine whether the contract is ambiguous.  *Level 3*, 535 F.3d at 1155.

6

the language of the FDA that plaintiff does not have standing to sue to enforce the Agreement.

Alternatively, plaintiff maintains that it is a "successor" to Wells Fargo following defeasance of the bonds, and, thus, comes within the scope of section 8.03. It provides no specific argument in support of this proposition, which alone is sufficient to reject its arguments. *See West LB AG, New York Branch v. DT Land Development, LLC*, 2010 WL 2867903 at *1 n.1 (D. Colo. July 21, 2010) (Blackburn, J.) ("The court is neither required nor inclined to either make legal arguments for a party or to hunt down legal authority to support its claims.").

Regardless, I am not persuaded. "Absent an indication the parties chose to deviate from plain meaning, the instrument's language must be examined and construed in harmony with the plain and generally accepted meaning of the words used. In other words, common usage prevails, and strained constructions should be avoided." *Level 3 Communications*, 535 F.3d at 1154 (citations and internal quotation marks omitted). "Successor," with reference to a corporate party, is defined as a "corporation that, through amalgamation, consolidation, or other assumption of interests, is vested with the rights and duties of an earlier corporation." BLACK'S LAW DICTIONARY (8th ed. 2004). *See also In re Stanley Hotel, Inc.*, 13 B.R. 926, 933 (Bankr. D. Colo. 1981) ("A 'successor' to a corporation is generally considered to be an entity which becomes invested with the rights and assumes the burdens of the first corporation, and which is thereafter responsible for . . . all debts, liabilities, and duties of the first corporation."); *Phoenix Capital, Inc. v. Dowell*, 176 P.3d 835, 845 (Colo. App. 2007) (agreeing with

lower court's determination that "the more usual definition of successor includes a business that succeeds to the whole or part of the business of another company"), ***cert. denied***, 2008 WL 434611 (Colo. Feb. 19, 2008).  Plaintiff only received back the corpus of the trust it had originally entrusted to Wells Fargo – it did not succeed to the rights, duties, and liabilities of Wells Fargo as that term is commonly understood.  Absent any proof that the parties intended to use the term "successor" in a more particularized sense, I find and conclude that plaintiff is not a successor within the meaning of section 8.03 of the FDA.

Relatedly, plaintiff asserts that it may sue on the Agreement because it is the real party in interest now that the Indenture has been discharged and all rights held in trust by Wells Fargo thereunder have reverted to plaintiff.  This theory is based on section 10.01 of the Indenture, which provides that once the Indenture is discharged, Wells Fargo must convey to plaintiff all property that was part of the "Trust Estate."  (**Plf. Resp.** App., Exh. 3 § 10.01 at 46.)  There are at least two problems with plaintiff's argument, however.

First, plaintiff provides little more than its own *ipse dixit* to support the crucial assumption that the FDA was, in fact, part of the Trust Estate.  Although the Indenture defines the Trust Estate to include seven categories of property (***see id.***, Exh. 3 § 10.01 at 13-14), plaintiff does not specify under which of these categories the FDA fits.  Again, its failure to do so is by itself sufficient ground to reject plaintiff's argument.  ***West LB AG, New York Branch***, 2010 WL 2867903 at *1 n.1.  Nevertheless, my own review of this section of the Indenture reveals no category clearly encompassing the FDA or any

rights provided thereunder.  (**See id.**, Exh. 3 §§ 2.01(a) at 13 & 2.01(f) at 14) (describing various types of revenues within the Trust Estate); § 2.01(b) at 13 (monies held by the trustee in any account); (**id.**, § 2.01(g) at 14 (other miscelleneous forms of property and other funds and revenues).)  Although the definition of the Trust Estate also encompasses plaintiff's rights in certain enumerated types of construction contracts (**see id.**, Exh. 3 § 2.01(d) at 13), it does not expressly contemplate a contract such as the FDA.

Second, even if plaintiff had demonstrated that the FDA was part of the Trust Estate, plaintiff itself characterizes its status as that of a "transferee of all right, title and interest of the Trust Estate" and asserts that "[t]he Assignment was the tool pursuant to which Section 10.01 transfer was effectuated."  (**Plf. Resp.** at 11.)  Aside from the curious reinvigoration of the assignment, which plaintiff has argued is not the basis for its assertion of rights under the Agreement, this argument only brings plaintiff back to the language of the FDA, which confers standing to sue on only the parties and their "permitted transferees."  (**Def. Motion** App., Exh. A-1 § 8.03 at 24.)  In the absence of evidence that defendant consented to the assignment, therefore, plaintiff's argument ultimately runs aground.

Accordingly, I find and conclude that plaintiff lacks standing to sue on the contract made the basis of its claims herein.  My resolution of this issue pretermits consideration of plaintiff's motion for summary judgment, which is directed to

defendant's counterclaim and affirmative defense.[5]

**THEREFORE, IT IS ORDERED** as follows:

1.  That **Plaintiff's Motion for Summary Judgment on Defendant's Counterclaim and Affirmative Defense** [#100], filed January 29, 2010, is **DENIED AS MOOT**;

2.  That defendant **HVB's Motion for Summary Judgment and Memorandum Brief in Support** [#104], filed January 29, 2010, is **GRANTED**;

3.  That **HVB's Motion To Strike Expert Report of and Preclude Testimony by Aron Jaroslawicz, Esq.** [#103], filed January 29, 2010, is **DENIED AS MOOT**;

4.  That plaintiff's claims are **DISMISSED WITHOUT PREJUDICE** for lack of standing.[6]

Dated August 9, 2010, at Denver, Colorado.

**BY THE COURT:**

Bob Blackburn

Robert E. Blackburn
United States District Judge

---

[5] Defendant acknowledges that "granting summary judgment against [plaintiff] for lack of standing may require dismissal without prejudice of [defendant's] counterclaim against [plaintiff] for breach of contract." (Def. Motion at 3 n.1 [#104], filed January 29, 2010.)

[6] The issues raised by and inherent to the cross motions for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motions stand submitted on the papers. *Cf.* FED. R. CIV. P. 56(c) and **(d)**. *Geear v. Boulder Cmty. Hosp.*, 844 F.2d 764, 766 (10th Cir.1988) (holding that hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties).